1   ROD M. FLIEGEL, Bar No. 168289
    rfliegel@littler.com
2   ALISON S. HIGHTOWER, Bar No. 112429
    ahightower@littler.com
3   AIMEE E. AXELROD, Bar No. 255589
    aaxelrod@littler.com
4   LITTLER MENDELSON
    A Professional Corporation
5   650 California Street, 20th Floor
    San Francisco, CA 94108.2693
6   Telephone:   415.433.1940
    Fax No.:   415.399.8490
7

8   Attorneys for Defendants
    RECOLOGY INC., a California Corporation, and
    RECOLOGY SAN FRANCISCO, a California
9   Corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEZZACK DANIELS, individually, and on behalf of all persons similarly situated, | Case No. CV 10-4140 JSW |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ACTION** |
| v. | Date:    December 3, 2010 |
| RECOLOGY INC. a California Corporation, RECOLOGY SAN FRANCISCO, a California Corporation *et al.*, | Time:    9:00 a.m.<br>Dept.:    11, 19th Floor |
| Defendant. | |

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND
     Case No. CV 10-4140 JSW

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF THE CASE ............................................................................. 2

    A.  Plaintiff's Job At Recology's Pier 96 ....................................................... 2

    B.  The Governing Collective Bargaining Agreement .................................... 3

    C.  The Biometric Time Clock And Time "Worked" ...................................... 5

    D.  The CBA's Mandated Drug Testing And Plaintiff's Failure To Pass A Drug Test ............................................................................................................ 5

    E.  Plaintiff Filed Suit And Defendants Timely Removed ............................. 6

III.  LEGAL ARGUMENT ......................................................................................... 6

    A.  Plaintiff's Wage Claims Are Preempted By The LMRA Because They Require Substantial Interpretation Of The CBA ....................................... 6

        1.  Plaintiff's Failure To Reference Section 301 Of The LMRA In His Complaint Does Not Preclude Removal. ........................................ 6

        2.  Plaintiff's Wage Claims Are Substantially Dependent On The Interpretation And Analysis Of The Terms Of The CBA .................. 7

            a.  Section 301 Has Been Held To Preempt Similar Claims For Compensation And Plaintiff Ignores That Authority ................. 7

            b.  Plaintiff's "Rounding" Claims Here Are Substantially Dependent Upon The CBA ................................................. 10

        3.  The Authority Plaintiff Relies Upon Is Inapposite ......................... 13

    B.  Plaintiff's Disability Discrimination Claim Is Preempted Since It Challenges The Drug Testing Procedures Adopted By The CBA ................................. 15

    C.  Alternatively, This Court Should Exercise Supplemental Jurisdiction Over The Pendent State Claim ..................................................................... 19

    D.  In Any Event, Defendant Brought A Good Faith Removal Petition And Fees Are Not Justified ................................................................................ 20

IV.  CONCLUSION .................................................................................................. 20

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

i.

Case No. CV 10-4140 JSW

**TABLE OF AUTHORITIES**

PAGE

**CASES**

*Ackerman v. Western Elec. Co.*
 860 F.2d 1514, 1517 (9th Cir. 1988) ............................................................... 19

*Adames v. Executive Airlines, Inc.*
 258 F. 3d 7 (1st Cir. 2001)........................................................................ passim

*Allis-Chalmers Corp. v. Lueck*
 471 U.S. 202 1985) .......................................................................................... 8

*Anchem Products v. Windsor*
 521 U.S. 591, 625 (1997)................................................................................ 12

*Blackwell v. SkyWest Airlines, Inc.*
 2008 U.S. Dist. Lexis 97955 (S.D. Cal. Dec. 3, 2008) ................................. 9, 12, 13, 15

*Burnside v. Kiewitt Pacific Corp.*
 491 F.3d 1053 (9th Cir. 2007) ................................................... 13, 14, 18

*Caterpillar Inc. v. Williams*
 482 U.S. 386 (1987) ......................................................................................... 7

*Chimel v. Beverly Wilshire Hotel Co.*
 873 F.2d 1283 (9th Cir. 1989) ....................................................................... 19

*Cook v. Lindsay Olive Growers*
 911 F. 2d 233 (9th Cir. 1990) ........................................................................ 19

*East v. Bullock's Inc.*
 34 F. Supp. 2d 1176 (D. Ariz. 1998) ............................................................. 10

*Firestone v. Southern Cal. Gas Co.*
 219 F. 3d 1063 (9th Cir. 2000) .................................................................. passim

*Fitz-Gerald v. SkyWest, Inc.*
 155 Cal. App. 4th 411 (2007) .......................................................................... 9

*Fristoe v. Reynolds Metals Co.*
 615 F. 2d 1209 (9th Cir. 1980) ........................................................................ 7

*General Telephone Co. of Northwest v. EEOC*
 446 U.S. 318 (1980)........................................................................................ 12

*Gregory v. SCIE, LLC*
 317 F.3d 1050 (9th Cir. 2003) ....................................................................... 15

*Hawaiian Airlines, Inc. v. Norris*
 512 U.S. 246, 264 (1994) ................................................................................. 9

*In re Combined Communications Corp. and International Brotherhood of Elec.*
 *Workers, Local 292*
 100 L.A. 17 (1992)........................................................................................... 11

*In re Curtis Mathes Manufacturing Co. and United Furniture Workers Local 376*
 73 L.A. 103 (1979)........................................................................................... 11

*In re George Hormel Co. and UFCW Local 76*
 90 LA 1246 (1988)........................................................................................... 11

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

ii.

Case No. CV 10-4140 JSW

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3

*In re Jacksonville Shipyards and Intern'tl Brotherhood of Boilermakers Local 805*
76 L.A. 652 (1981)............................................................................................. 11

4

*In re School Services & Leasing, Inc. and Amalgamated Transit Union Div. 788*
103 L.A. 138 (1994)........................................................................................... 11

5

6

*Jackson v. Southern Cal. Gas Co.*
881 F.2d 638 (9th Cir. 1989) ............................................................................. 19

7

*Jimeno v. Mobil Oil Corp.*
66 F. 3d 1514 (9th Cir. 1995) ............................................................................ 19

8

*Lindow v. United States*
738 F. 2d 1057 (9th Cir. 1984) .......................................................................... 12

9

*Livadas v. Bradshaw*
512 U.S. 107 (1994)............................................................................................. 8

10

*Local 174, Teamsters of Am. v. Lucas Flour Co.*
369 U.S. 95 (1962).............................................................................................. 7

11

12

*Martin v. Franklin Capital Corp.*
546 U.S. 132 (2005)........................................................................................... 20

13

*Moore-Thomas v. Alaska Airlines, Inc.*
553 F. 3d 1241 (9th Cir. 2009) ........................................................................... 7

14

*Pruell v. Caritas Christi, et al.*
2010 U.S. Dist. Lexis 101770 (D. Mass. Sept. 27, 2010)....................... 9, 10, 12, 15

15

*Ramirez v. Fox Television*
998 F. 2d 743 (9th Cir. 1993) ............................................................................ 19

16

*Schroeder v. Trans World Airlines, Inc.*
702 F. 2d 189 (9th Cir. 1983) ........................................................................... 6, 7

17

18

*Textile Workers Union v. Lincoln Mills*
353 U.S. 448 (1957)............................................................................................ 7

19

**STATUTES AND REGULATIONS**

20

29 C.F.R. §785.48(b) ......................................................................................... 10

21

29 U.S.C. § 185.................................................................................................... 1

22

45 U.S.C. § 151 ................................................................................................... 9

49 C.F.R. § 40.193 ........................................................................................ 6, 16

23

49 C.F.R. §§ 40.1 *et. seq*. .................................................................................. 6

24

**RULES**

25

Fed. R. Civ. Proc. 23(b)(3) ............................................................................... 13

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## I.   INTRODUCTION

Plaintiff's remand motion disputes whether his class-wide California wage claims (primarily for alleged improper "rounding" of time up to the quarter hour) are preempted by Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185).  Plaintiff's motion is unpersuasive and should be denied because it (1) fails to even attempt to place his wage claims in context – dismissing as insignificant the relationship between his rounding claim and the pay provisions in the applicable collective bargaining agreement ("CBA"), and (2) grossly oversimplifies the legal standard – ignoring the cases finding LMRA preemption in similar circumstances in this and other Circuits.

By way of background, Plaintiff brings this putative class action on behalf of himself and workers in at least eight job classifications, claiming they are entitled to straight time and overtime for hours supposedly "worked" but not paid because Defendant's payroll system rounded time up to the quarter hour.  Plaintiff is a member of Sanitary Truck Drivers and Helpers Union, Local 350.  A CBA between Local 350 and Recology San Francisco ("Recology") has governed the terms and conditions of Plaintiff's employment – and the employment of the putative class members – at all times material to the Complaint.  That CBA governs work hours, regular pay rates, pay for weekend work, pay for work in "higher classifications," guaranteed pay, and premium pay for "work" before the start of the regular shift.[1]

The issue for the Court is whether resolution of Plaintiff's class-wide wage claims is "substantially dependent" on an interpretation of the pay provisions in the CBA, as asserted by Defendant, or whether the CBA is utterly inconsequential, as alleged by Plaintiff.  Defendant plainly has the better argument.  Plaintiff maintains the Court can resolve his claims by simply reconciling the workers' time records against their corresponding wages.  (Pltf. Mtn. at 5:19-21)  But Plaintiff's argument is superficial and predicated on the demonstrably false assumption that the time records *alone* dictate the workers' pay.  In fact, to determine whether any worker truly was underpaid in a given pay period, it will be necessary to *interpret* and *apply* (not just consult) the various pay

---

[1]   Recology Inc. is a holding company with no employees.  Plaintiff was and is employed by Recology San Francisco.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

Case No. CV 10-4140 JSW

provisions in the CBA. Put another way, the time records for the pay period will tell only part of the story. To get the "full story," the totality of each workers' compensation for the pay period will have to be analyzed (for example, whether his wages for the pay period *exceeded* his time clocked into work due to CBA-provided premium pay or pay guarantees). Thus, Plaintiff's wage claims are clearly preempted.

Plaintiff's individual state law disability discrimination claim is preempted for this same reason. This claim is predicated upon Plaintiff's contention that Recology acted without a legitimate nondiscriminatory reason when it suspended Plaintiff for failing to pass a random drug test under the procedures mandated by the CBA itself. (Pltf. Mtn. at 1:23-2:5) Resolution of this claim turns largely on Recology's offer of a legitimate nondiscriminatory reason *grounded in* the CBA's express terms. That claim is preempted accordingly.

Since Plaintiff's class-wide and individual claims are preempted by Section 301 of the LMRA, his motion to remand should be denied.

## II.   STATEMENT OF THE CASE

### A.   Plaintiff's Job At Recology's Pier 96

Plaintiff began working for Recycle Central, Inc., a dba for Recology, on or about May 2, 2008 as a "classifier" at Recology's recycling facility at Pier 96 in San Francisco.[2] (Declaration of Michael Crosetti, ¶ 3.) The classifier's job involves sorting waste from recyclable material that is transported on a conveyor belt in front of them. (Declaration of John Jurinek, ¶ 4.) The classifiers remove the waste products so that clean recyclable material remains on the belt. (*Id.*) Material that is not removed from the belt goes into a container conveyor of recyclable material that is baled and sold to Recology's customers. (*Id.*) If the conveyor belt is not fully manned, all waste material will not be removed from the belt, resulting in poor quality, contaminated recyclable material intended for sale to customers. (*Id.*)

---

[2]   "Recology San Francisco" is the new name for what used to be called San Francisco Recycling & Disposal, Inc. (Crosetti Decl., ¶ 3.) That name change occurred in approximately April 2009. Recycle Central remains a fictitious name for Recology. (*Id.*)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    2.                    Case No. CV 10-4140 JSW

### B.    The Governing Collective Bargaining Agreement

From the beginning of his employment with Defendant, Plaintiff has been a member of Local 350. (Crosetti Decl., ¶ 4.)  Local 350 is a labor organization in which certain employees of Recology participate and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. (*Id.*)

During Plaintiff's employment with Recology, a CBA entered into by and between Local 350 and Recology, effective January 1, 2006 through December 31, 2011, has governed the terms and conditions of Plaintiff's employment. (*Id.*, Ex. 1.) This agreement contains *detailed* provisions governing the work hours, the rates of pay, and drug testing, among other things over this six year period. The CBA covers or provides in pertinent part that:

- Job classifications and wage rates for eight job classifications for each of the six years of the CBA term. (*Id.*, Section 5(d).)

- "Any disputes involving job classifications shall be settled in accordance with the procedures set forth in Section 17 hereof." (*Id.*, Section 5(d).) Section 17 provides the process required for discharges and suspensions.

- Certain workweek and seniority provisions apply to only two of the eight job classifications (Recycling Weighmasters and Buyback Attendants). These employees receive "an additional 10% for hours worked on [Saturday]" and each such employee "working on the sixth or seventh consecutive day is guaranteed 8 hours of pay at the overtime rate of pay." For these employees only, "[t]he overtime rate of pay for the sixth consecutive day shall be one and one half (1 ½) the hourly rate of pay." Further, "[t]he overtime rate for the seventh consecutive day shall be double the hourly rate of pay." (*Id.*, Section 5(g).) No similar 10 % enhancement is provided for the other six classifications of employees.

- "The seniority of Recycling Weighmasters and Buyback Attendants shall reflect the day they started working for West Coast Recycling." (*Id.*, Section 5(g).) Seniority is not discussed with respect to the other six job classifications.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

3.

Case No. CV 10-4140 JSW

- "Employees who work in a higher classification shall be compensated for their efforts at the higher rate of pay for actual hours worked. Any employee who works over four (4) hours in a single work day at a higher wage classification shall be guaranteed at least one hour's pay for work in that classification." (*Id.,* Section 5(g).)

- "In the event the Maintenance Operator is called back to work by the Company after completing his/her regular scheduled workday, he/she will be paid an additional Twenty Dollars ($20.00) over and above his wages for travel time. Employees called back to work shall be guaranteed two (2) hours pay at the applicable wage rate." (*Id.,* Section 5(e)(i).) No similar provision is included for employees in the other seven classifications.

- Cost of living adjustments must be made every year. (*Id.,* Section 5(g)[sic].)

- All new employees (hired after ratification of the CBA in 2006) shall be hired under varying wage percentages which take precedence over the other hourly wages specified by the Agreement. (*Id.,* Section 5(h)(i).)

- "All regular employees shall be **guaranteed** forty (40) straight time hours of pay per week; provided such employees make themselves fully **available for work**; provided further, however, that such guarantees shall not apply to employees with less than ninety (90) days of continuous service to the Employers." (*Id.,* Section 7(a) [emphasis added].)

- "If overtime is required by the Employer it must be **worked** by the employee." (*Id.,* Section 8(d) [emphasis added].)

- "All employees who start **working** before their regularly assigned starting time will receive time and one half (1-1/2) for all **hours worked** before their regular starting time." (*Id.,* Section 8 [emphasis added].)

- "[A]ny employee **working** any part of a day shall receive a full day's pay, if he presents himself and is **available for work** during the working day." (*Id.,* Section 21 [emphasis added].)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

4.

Case No. CV 10-4140 JSW

- Holiday pay is specified for *regular employees* to include "eight (8) hours straight time pay plus an additional sixteen (16) hours pay at straight time pay for any holiday *actually worked*," including the conditions to receive the additional pay. (*Id.,* Section 9(b) [emphasis added].)

- Vacation pay shall be computed and paid at the classification in which the employee worked the most hours in the preceding calendar year. This shall not apply where an employee has successfully 'bid into' a new classification. In that instance, vacation pay shall be paid at the classification rate which the employee bid into." (*Id.,* Section 9(f).)

None of the bolded terms are defined in the CBA.

**C.      The Biometric Time Clock And Time "Worked"**

During part of his tenure at Pier 96, employees at the Pier have clocked in and out by use of an automated time clock system called "Time Clock Plus." (Jurinek Decl., ¶ 4.) This biometric system uses a hand scanner to identify employees and records the exact time when the employee clocks in and out. (*Id.*) Pier hourly employees can clock in up to seven minutes before the start of their shifts.

If a classifier employee clocks in before his shift starts, he cannot start sorting waste, however, because sorting cannot sort until the conveyor belt is turned on, and that does not happen until the shift starts or thereafter. (*Id.*) The reason for this delay is that the conveyor belt has to be fully manned to avoid waste contaminating the recyclable material. If the recyclable material becomes contaminated with waste, its value is reduced and if Recology sells the contaminated recyclables, it risks losing customers. (*Id.*) Therefore, the classifiers begin sorting when the conveyor belt is turned on and that does not occur until at least the start of their shift, if not several minutes after. (*Id.*)

**D.      The CBA's Mandated Drug Testing And Plaintiff's Failure To Pass A Drug Test**

An addendum to the CBA provides that all employees are subject to drug testing in accordance with the federal Motor Carrier Safety Administration regulations, irrespective of whether the employee drives a vehicle as part of his job duties. (Ex. 2 to Crosetti Decl.) These regulations

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

5.

Case No. CV 10-4140 JSW

1  specify the method for conducting random drug tests, including the procedures to follow when the

2  employee is unable or unwilling to provide a urine specimen within three hours.  49 C.F.R. §§ 40.1

3  *et. seq.*, 49 C.F.R. § 40.193.

4          Plaintiff was subject to a random drug test on May 24, 2010, and failed to provide an

5  adequate urine specimen, despite having three hours to provide that sample. (Complaint, ¶ 52.)  In

6  accordance with the procedures established by the CBA, Plaintiff was suspended without pay for

7  three months as a result.  (*Id.*, ¶ 54.)

8      **E.      Plaintiff Filed Suit And Defendants Timely Removed**

9          On August 12, 2010, Plaintiff filed a Complaint in the San Francisco Superior Court

10  alleging five causes of action:  (1) Failure to Compensate Employees for All Hours Worked; (2)

11  Failure to Maintain Employee Time Records; (3) Failure to Furnish Wage and Hour Statements; (4)

12  Unfair Competition; and (5) Disability or Perceived Disability Discrimination under the Fair

13  Employment Housing Act ("FEHA").  Plaintiff alleges his first four causes of action on behalf of

14  himself and a class defined as "all persons who, at any time during the four (4) years preceding the

15  filing of this action, were employed by Defendants, including any of its subsidiary, parent, and

16  affiliated corporations as Recycling Weighmasters, Buy-Back Attendants, Classifiers, Helpers,

17  Equipment Operators or other hourly positions in the State of California." (Complaint, ¶ 16.)  The

18  gravamen of Plaintiff's putative class action claims is his contention that the time clock system used

19  that rounded time to the nearest quarter hour deprived him and the putative class of compensation for

20  all time worked.  (*Id.*, ¶ 30.)

21          Defendant was served with the Complaint on August 16, 2010 and timely removed

22  this action on September 15, 2010 on the basis of LMRA preemption.

23  **III.     LEGAL ARGUMENT**

24      **A.      Plaintiff's Wage Claims Are Preempted By The LMRA Because They Require
            Substantial Interpretation Of The CBA.**

25

26          **1.      Plaintiff's Failure To Reference Section 301 Of The LMRA In His
                    Complaint Does Not Preclude Removal.**

27          A plaintiff may not be permitted to "artfully plead" his complaint to conceal the true

28  nature of the complaint. *Schroeder v. Trans World Airlines, Inc.*, 702 F. 2d 189, 191 (9th Cir. 1983)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                6.                      Case No. CV 10-4140 JSW

1   (affirming removal based on preemption), *overruled on other grounds, Moore-Thomas v. Alaska*

2   *Airlines, Inc.*, 553 F. 3d 1241, 1246 (9th Cir. 2009).   Thus, the fact that Plaintiff has not made

3   specific reference to Section 301 of the LMRA in his Complaint will not preclude removal.  *Fristoe*

4   *v. Reynolds Metals Co.*, 615 F. 2d 1209, 1212 (9th Cir. 1980) (affirming summary judgment for

5   employer and finding LMRA preemption).   This Court may properly look beyond the face of the

6   Complaint to determine whether the claims asserted are preempted by Section 301.  *Schroeder*, 702

7   F. 2d at 191.  Additionally, the Court may properly look to the facts stated in the Notice of Removal

8   "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal

9   jurisdiction." *Id.*

10          An artfully pled state law claim is properly "recharacterized" as a federal claim under

11   the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the

12   LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the

13   well-pleaded complaint rule" and is removable to federal court.  *Caterpillar Inc. v. Williams*, 482

14   U.S. 386, 393 (1987).

15          **2.      Plaintiff's Wage Claims Are Substantially Dependent On The
                      Interpretation And Analysis Of The Terms Of The CBA.**

16

17          **a.      Section 301 Has Been Held To Preempt Similar Claims For
                      Compensation And Plaintiff Ignores That Authority**

18          Plaintiff does not dispute that Section 301 of the LMRA provides a basis for federal

19   jurisdiction and authorizes federal courts to develop a federal common law of CBA interpretation.

20   Properly so.  *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962); *Textile*

21   *Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 456 (1957) (enforcing collective bargaining

22   agreement).    To ensure *uniform interpretations of collective bargaining agreements*, federal

23   common law preempts the use of state contract law in collective bargaining agreement interpretation

24   and enforcement.  *Lucas Flour Co.*, 369 U.S. at 103-04.

25          Although the language of Section 301 references "suits for violation of contracts," no

26   less authority than the United States Supreme Court has construed Section 301 broadly to cover most

27   state-law actions that require interpretation of labor agreements.  *Allis-Chalmers Corp. v. Lueck*, 471

28   U.S. 202, 220 (1985).    Thus, Section 301 preempts state law claims if their evaluation is

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    7.                    Case No. CV 10-4140 JSW

"inextricably intertwined" with consideration of the terms of a labor contract. *Id.* at 213; *Firestone v. Southern Cal. Gas Co.*, 219 F. 3d 1063, 1065 (9th Cir. 2000). However—and importantly here—Section 301 preempts state law claims that merely "are substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis-Chalmers*, 471 U.S. at 220; *Firestone*, 219 F. 3d at 1065.

Courts in the Ninth Circuit, including the Ninth Circuit itself, have held that the LMRA preempts certain state law wage and hour claims because those claims were substantially dependent upon an analysis of the CBA. Significantly, none of the line of cases that so hold are mentioned—let alone discussed—in Plaintiff's remand motion, even though all but one of these cases was cited in Defendant's Notice of Removal. This line of authority demonstrates that removal here is appropriate because Plaintiff's "rounding" claim seeking additional compensation on behalf of himself and a class is likewise substantially dependent on an analysis of various terms in Recology's CBA. We first discuss this case authority and then discuss how that authority results in preemption here when applied to the context of Plaintiff's "rounding" claim.

First, Plaintiff's motion to remand ignores the Ninth Circuit's decision in *Firestone*, 219 F.3d 1063. Like Plaintiff here, the plaintiffs in *Firestone* sought wages for alleged unpaid overtime under California and also federal law. The Ninth Circuit affirmed LMRA preemption, applying the "substantially dependent" prong of preemption analysis. *Id.* at 1065. The court further explained that the parties' dispute could not be resolved without interpreting certain wage payment related terms in the CBA, particularly the meaning of the term "regular rate" of pay, in order to determine the amount owed at one and a half times the regular rate by statute. Because of the need to interpret the "regular rate" under the CBA *in light of statutory obligations*, more than mere "reference" to the CBA was required to resolve plaintiffs' claim, and thus cases such as *Livadas v. Bradshaw*, 512 U.S. 107 (1994) and its progeny, were inapposite. *Id.*, 219 F. 3d at 1067.

Second, the Ninth Circuit cited a First Circuit case with approval in *Firestone*, 281 F.3d at 802. In that case—*Adames v. Executive Airlines, Inc.*, 258 F. 3d 7 (1st Cir. 2001)—state law claims for minimum wage and meal and rest period violations also were found to be preempted where allegations of owed overtime "inescapably involved the relationship between various [Puerto

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

8.

Case No. CV 10-4140 JSW

1    Rican] labor laws . . . and certain terms of the CBA **addressing the same subject**." *Id.*, 258 F.3d at

2    12 (emphasis added).  As that court noted, state law "must yield to the developing federal common

3    law, lest common terms in bargaining agreements be given different and potentially inconsistent

4    interpretations in different jurisdictions." *Id.  Accord, Fitz-Gerald v. SkyWest, Inc.*, 155 Cal. App.

5    4th 411, 421 (2007) (overtime claim under California law preempted by Railway Labor Act due to

6    need to interpret regular rate of pay to resolve claim).  Plaintiff's motion to remand does not even

7    mention let alone distinguish *Adames*.

8            Third, Plaintiff also ignores *Blackwell v. SkyWest Airlines, Inc.*, 2008 U.S. Dist. Lexis

9    97955 (S.D. Cal. Dec. 3, 2008).  The plaintiff there alleged SkyWest failed to pay her all wages

10   owed, including overtime compensation and wages for missed meal and rest periods.  The governing

11   CBA dictated what pay rates applied to straight time, various shifts and types of paid time off.  The

12   court held that claims under the California Labor Code were preempted by the Railway Labor Act,

13   45 U.S.C. § 151, because "any attempt to determine *whether*, *when*, and *how much* compensation is

14   owed to Blackwell necessarily requires an interpretation of the CBA's provisions."[3]  *Id.* at *33

15   (emphasis added).

16           After Recology removed this action to this Court, another opinion was rendered that

17   also fully supports this removal.  In *Pruell v. Caritas Christi, et al.*, 2010 U.S. Dist. Lexis 101770

18   (D. Mass. Sept. 27, 2010), the plaintiff employees sued in state court under Massachusetts wage and

19   hour and common laws on the basis that their employer automatically deducted half-an-hour for a

20   meal break and failed to pay employees for work performed before and after their shifts.  The

21   defendant removed on the basis of Section 301 preemption, and the plaintiffs moved to remand.  The

22   district court denied that motion, holding that the need to apply several CBA provisions to establish

23   the plaintiffs' wage rates to determine the remedy—assuming the employees were found entitled to

24   receive additional regular or overtime pay—required interpretation of the CBA.  The court rejected

25   the plaintiffs' argument that because the meaning of these CBA provisions was not disputed, the

26   CBA did not have to be interpreted. *Id.*

27   ───────────────

28   [3]    Preemption analysis under the Railway Labor Act is identical to that under the LMRA.
*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 264 (1994).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                9.                        Case No. CV 10-4140 JSW

**b.   Plaintiff's "Rounding" Claims Here Are Substantially Dependent Upon The CBA**

Plaintiff does not even discuss any of this case authority that supports removal in the specific context presented here.  Instead, Plaintiff offers a cursory discussion, ignoring any analysis of the interplay between the terms of the CBA and the claims brought here in the context of these facts.  As in *Firestone* and the other cases discussed above, Plaintiff's "rounding" claim is substantially dependent upon an analysis of the terms of the collective bargaining agreement.  Plaintiff's core claim is that Plaintiff, and all persons similarly situated, are entitled to recover wages for hours "worked" before the start of their regular shifts.  For instance, Plaintiff contends that when he allegedly "clocked in" five minutes before his 4:00 a.m. shift was to begin, he "worked" for five minutes, and because Defendants' timekeeping system "rounded" that time up to the nearest quarter hour (i.e., 4:00 a.m.), Plaintiff was not paid for those five minutes he supposedly "worked."  In essence, Plaintiff asserts that the rounding of time was imbalanced, supposedly resulting in Plaintiff and all similarly situated employees being deprived of otherwise owed straight time and overtime. *See, e.g., East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1183 (D. Ariz. 1998) (rounding practices averaged out sufficiently); 29 C.F.R. §785.48(b).

Plaintiff's contentions require a series of analyses to occur to resolve this dispute, and in the process of conducting these analyses, the CBA will become front and central.

First, the court will have to determine whether all time from the point of "clock in" forward is, under the explicit terms of the CBA, ***working*** time under Section 8 or ***available for work*** under Section 21.  Plaintiff claims he—and other employees—were "working" from the time each employee clocked in at a few minutes before 4:00 a.m. forward, but Recology disputes that any "work" occurred or was even available until enough classifiers were standing at the conveyor belt and it was turned on, and that the belt was not activated until at least the shift start time if not later. (Jurinek Decl., ¶ 4.)

What constitutes "working" is hardly self-evident and is, and has been, a disputed, central issue in numerous federal labor arbitrations for many years.  Arbitrations have resolved issues such as whether a CBA stating that "travel time shall be treated as working time" required

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

10.

Case No. CV 10-4140 JSW

1   payment of time spent on overseas flight as "working time" (*In re Combined Communications Corp.*

2   *and International Brotherhood of Elec. Workers, Local 292*, 100 L.A. 17 (1992); whether time spent

3   washing hands must occur on work time or during uncompensated breaks (*In re George Hormel Co.*

4   *and UFCW Local 76*, 90 LA 1246 (1988)); whether certain tasks preliminary to work constitute

5   work time entitled to premium pay under the CBA (*In re Jacksonville Shipyards and Intern'tl*

6   *Brotherhood of Boilermakers Local 805*, 76 L.A. 652 (1981)); whether 5 to 20 minute periods while

7   employees were subject to security procedures constituted "hours worked" (*In re Curtis Mathes*

8   *Manufacturing Co. and United Furniture Workers Local 376*, 73 L.A. 103 (1979)); and whether

9   duties performed by school bus operators both before and after picking up students is compensable

10  time under the CBA even though most likely compensable under federal law. *In re School Services*

11  *& Leasing, Inc. and Amalgamated Transit Union Div. 788*, 103 L.A. 138, 141 (1994).

12          Here, whether Plaintiff and other hourly employees were "working" from the time

13  each clocked in despite their inability to actually begin their job duties before the start of their shifts

14  will require analysis of the CBA because that CBA arguably requires Recology to pay Plaintiff and

15  any class members ***both*** a full day's pay as well as overtime for any time "worked" before the

16  regular starting time.[4]  Yet if the amount of time "clocked in" before the start of the shift balances

17  with the amount of time rounded in the employee's favor, then the Court will have to square how the

18  CBA provisions governing payment of regular pay and overtime mesh with the law permitting

19  rounding that is balanced.  To do so will require deciding the rounding claim within the context of

20  the CBA's pay requirements.

21          Second, this analysis will be further complicated because Plaintiff seeks to certify a

22  class not only of Classifiers, but also all hourly employees, including Recycling Weighmasters, Buy-

23  Back Attendants, Helpers, and Equipment Operators.  (Complaint, ¶ 17.)  The CBA provides

24  differing rates of pay for employees by job classification, as well as enhanced pay for only *some* of

25  these classifications.  (Crosetti Decl., Ex. 1, Sec. 5(g).)  And in addition, this resolution will have to

---

26  [4]  The CBA provides "[a]ll employees who start ***working*** before their regularly assigned starting
     time will receive time and one half (1-1/2) for all ***hours worked*** before their regular starting time."
27  (Corsetti Decl., Ex. 1, Sec. 8.)  The CBA also states that "any employee ***working*** any part of a day
     shall receive a full day's pay, if he presents himself and is ***available for work*** during the working
28  day."  (*Id.*, Sec. 21 (emphasis added).)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND          11.          Case No. CV 10-4140 JSW

1    determine for each day when an employee worked in a "higher classification" as defined by the CBA

2    whether those employees are owed a higher rate of pay, based not only on whether the time clock

3    system was out of balance, but also on whether that imbalance is based on "actual hours worked," as

4    required by the CBA to receive the enhanced pay rate for the day.  Since the CBA guarantees at least

5    one hour's pay for work in the higher classification when the employee works over four hours in a

6    single work day at a higher wage classification, Plaintiff's claim will require determining whether

7    time clocked before the start of the shift counts toward this four hour threshold even if that time was

8    not "working" time in the sense of doing the tasks normally done by that job classification.

9         Third, Plaintiff also does not dispute that he will claim that any "work" before the

10   start of the shift is compensable at the CBA premium rate, even where the law would view such time

11   as not compensable *de minimis* time.[5]  *Lindow v. United States*, 738 F. 2d 1057 (9th Cir. 1984).  As

12   in *Firestone, Adames, Blackwell* and *Pruell*, determining whether Plaintiff (or any of the class

13   members he purports to represent) is entitled to a premium wage rate for any "work" before his

14   regular shift and also for any overtime will require interpreting fundamental and undefined terms

15   that are central to the bargain that the parties reduced to writing in the CBA.

16        Further complicating the analysis is the fact that the CBA guarantees 40 hours of

17   straight time pay per week, but only if "the employees make themselves fully available for work."

18   (Crosetti Decl., Ex. 1, Sec. 7(a).)  How this requirement will interplay with Plaintiff's rounding

19   claim is unclear.  If an analysis of the actual times punched into the time clock shows that certain

20   employees were overpaid because the rounding worked in their favor that week, are those employees

21   nevertheless entitled to 40 hours of straight time?  What does the CBA mean by requiring the

22

---

[5]      Plaintiff has put himself in somewhat of a bind as a consequence of his decision to try to
23   front a class action.  On the one hand, Plaintiff must side-step the CBA to avoid preemption.  On the
     other hand, Plaintiff can hardly disclaim the *more generous* compensation afforded to the putative
24   class members without creating an obvious conflict with the class, potentially dooming class
     certification.  *E.g., Anchem Products v. Windsor*, 521 U.S. 591, 625 (1997) (conflicts precluded a
25   finding that would satisfy the requirement in Rule 23(a)(4) that the named class representatives "will
     fairly and adequately protect the interests of the class"); *General Telephone Co. of Northwest v.*
26   *EEOC*, 446 U.S. 318, 331 (1980) ("In employment discrimination litigation, conflicts might arise,
     for example, between employees and applicants who were denied employment and who will, if
27   granted relief, compete with employees for fringe benefits or seniority.  Under Rule 23, the same
     plaintiff could not represent these classes.").

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO          12.                    Case No. CV 10-4140 JSW
PLAINTIFF'S MOTION TO REMAND

1   employee to be "fully available for work"?  Does the time spent after clocking in but before, for

2   example, the conveyor belt is started constitute time when the employee is "available for work" or

3   does that answer depend on what the employee does with that time after clocking in?

4          Just like the necessity in *Blackwell* to consider various pay rates for different work

5   categories and other factors "to determine whether, when, and how much compensation is owed to

6   Blackwell require[d] an interpretation of the CBA provisions," determining the "whether, when and

7   how much" compensation might be owed to Plaintiff and all hourly employees at the Pier will

8   require an interpretation of the CBA's *many* applicable provisions.  *Blackwell*, 2008 U.S. Dist. Lexis

9   97955 at *33.

10          These issues will not be faced simply at the remedy stage because Plaintiff brings this

11   case as a putative class action.  In analyzing whether asserted common questions of law or fact

12   predominate over questions affecting only individual members for purposes of determining whether

13   to certify a class, the Court will need to consider just such questions.  Fed. R. Civ. Proc. 23(b)(3).

14   As in *Adames*, where Puerto Rican law claims for overtime were preempted because those claims

15   "inescapably involved the relationship between various [] labor laws . . . and certain terms of the

16   CBA addressing the same subject," determining whether Plaintiff here is entitled to overtime will

17   inescapably involve the relationship between California labor laws and the terms of the CBA

18   addressing the same subject. *Adames*, 258 F.3d at 12.

19          In short, resolution of Plaintiff's First through Fourth Causes of Action is

20   substantially dependent on analysis and interpretation of the relevant CBA and thus these claims are

21   completely preempted by Section 301 of the LMRA. *Firestone*, 219 F. 3d at 1065.

22          **3.**     **The Authority Plaintiff Relies Upon Is Inapposite.**

23          Plaintiff attempts to avoid preemption by arguing that the preemption analysis is

24   controlled by a few cases, primarily *Burnside v. Kiewitt Pacific Corp.*, 491 F.3d 1053 (9th Cir.

25   2007).  But Plaintiff confuses the question whether preemption is *required* simply because a CBA

26   may pertain to an issue also addressed by state law from whether the claims "*substantially depend*"

27   upon the terms of that CBA.  Significantly, as the court explained in *Burnside*, even when an

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

13.

Case No. CV 10-4140 JSW

1   independent state right is being enforced, the state claims still are preempted by Section 301 if the

2   claim is merely substantially dependent upon an analysis of the terms of the CBA.

3        In *Burnside*, the issue was whether plaintiffs were entitled to be paid for time

4   traveling from a designated meeting point to the job site when there was no dispute that the

5   employer required this travel.   The right to be compensated for travel time, the court found,

6   "instantly attaches to all employees covered under [California] Wage Order 16-2001, disappearing

7   only if a governing CBA includes clear language to the contrary." *Id.* at 1063.   The fact that the

8   CBA could opt out of the wage order did not mandate a finding of LMRA section 301 preemption.

9   As the court held, "the mere presence of an opt-out provision in section (5)(D) of Wage Order 16-

10  2001 does not automatically sever the employees' connection to their state-law rights. . . ." *Id.* at

11  1070.

12        Having held that the rights sought to be enforced were not "dependent" upon the

13  CBA, the court then remarked, "[t]his conclusion does not end our inquiry.   We must now ***separately***

14  ***consider*** whether Burnside's claims are nevertheless preempted by section 301 because they

15  'substantially depend[] on' an interpretation of the terms of the CBAs." *Id.* (emphasis added).   The

16  court then found that the claims did not "substantially depend" upon an interpretation of the CBAs

17  because the only need to consult the CBAs was to confirm they did not contain the opt out provision

18  permitted by the wage order.   No provision of the CBA was relevant to the dispute at hand regarding

19  whether state law mandated compensation for the employer's required travel. *Id.* at 1071-72.

20        By contrast here, to determine a remedy for Plaintiff's wage claim, the court will have

21  to decide whether Plaintiff and other employees not only clocked in before their shift, but whether

22  they were "working" within the meaning of the CBA, whether they are entitled to a full day's pay

23  for being "available for work," whether they are entitled to overtime under these provisions if they

24  clocked in early but did not work eight hours in the day, how their regular pay and overtime would

25  be calculated, and how to apply the various wage rates and compensation guarantees contained in the

26  CBA.   Resolution of this dispute will not be simply a matter of comparing timecards to the rate of

27  pay, as Plaintiff suggests.   Rather, resolution will require making numerous determinations based on

28  various CBA provisions that govern rates of pay and amount of pay under the terms of the CBA.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    14.                    Case No. CV 10-4140 JSW

Similarly, Plaintiff's reliance on *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003), is misplaced because the issue there was whether the employer motion picture production company could avoid paying overtime by splitting an employee's time among multiple movie productions. There was no dispute over what time was worked, only whether Labor Code section 514 applied, which exempts employees from overtime if they are covered by a valid collective bargaining agreement under certain circumstances. The employer could not show that the CBA had any provisions relevant to the dispute beyond this potential exemption to section 514.

In short, what remedy Plaintiff and the class he purports to represent are entitled to (if any) for unpaid time due to the rounding of time to the quarter hour is substantially dependent upon the terms of the CBA *irrespective* of whether Plaintiff seeks to enforce independent state rights. As in *Firestone, Blackwell, Adames*, and *Pruell*, resolving this dispute, including determining the remedy, will be substantially dependent upon an analysis of the CBA's numerous provisions. Plaintiff's First through Fourth Causes of Action therefore are preempted by Section 301 of the LMRA and federal question jurisdiction is established.

**B.      Plaintiff's Disability Discrimination Claim Is Preempted Since It Challenges The Drug Testing Procedures Adopted By The CBA.**

Plaintiff does not dispute that he was chosen for a random drug test on May 24, 2010 pursuant to a side agreement reached between Defendant Recology San Francisco and Plaintiff's union. That May 20, 2009 "Letter of Understanding" (Ex. 2 to Crosetti Decl.) provides that Section 26 of the CBA, governing random drug testing, "shall adopt and apply the drug and alcohol testing requirements of the Federal Motor Carrier Safety Administration ('FMCSA') to all employees subject to these [CBAs], including any employees performing work that the federal Department of Transportation would not deem 'safety sensitive' . . . and to conform the testing provisions of the Company's Substance Abuse Policy to the FMCSA procedures related to substance abuse testing."

The FMCSA testing requirements provide a protocol for handling situations where persons subjected to a random drug test are unable to provide a sufficient urine sample. For instance, the collector shall "urge the employee to drink up to 40 ounces of fluid through a period of up to three hours," or "until the employee provides a sufficient urine specimen" within that time

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

15.

Case No. CV 10-4140 JSW

1    window.  49 C.F.R. § 40.193(b)(2)-(4).  If the employee does not provide a sufficient specimen

2    within three hours of the first unsuccessful attempt to provide the specimen, the collector must

3    discontinue the collection.  49 C.F.R. § 40.193(b)(4)

4            A referral physician then evaluates the employee and recommends either that "a

5    medical condition has, or with a high degree of probability could have, precluded the employee from

6    providing a sufficient amount of urine" [*id.*, § 40.193(d)(1)] or "[t]here is not an adequate basis for

7    determining that a medical condition has, or with a high degree of probability could have, precluded

8    the employee from providing a sufficient amount of urine."  *Id.*, 49 C.F.R. § 40.193(d)(2).  The

9    referral physician's recommendation is reviewed by a "medical review officer" ("MRO"), who

10   determines whether to accept the recommendation of the referral physician.  49 C.F.R. § 40.193(h)

11   As Plaintiff himself alleges, a "shy bladder" (inability to urinate) without a medical explanation is

12   treated under this CBA-mandated protocol as failing the drug test (Complaint, ¶ 54), presumably

13   since a person who knows he used illegal drugs likely will choose not to give a specimen.  An

14   employee who fails the drug test is precluded from returning to work until successfully completing a

15   drug treatment or rehabilitation program.  (*Id.*, ¶ 55.)

16           Plaintiff here admits he failed to provide a sufficient sample of urine within three

17   hours on his day of random testing and the MRO did not find an adequate basis for determining that

18   a medical condition had, or with a high degree of probability could have, precluded Plaintiff from

19   providing a sufficient specimen. (Complaint, ¶ 55.)  Plaintiff was thus suspended from employment

20   for three months. (*Id.*)

21           Although Plaintiff does not dispute that the CBA-mandated testing procedures were

22   applied to him, he alleges in his Fifth Cause of Action that Defendants' use of these CBA-required

23   testing procedures and suspension requirements caused him "to sustain a loss of past and future

24   earnings and employment benefits and to sustain emotional distress" based on Defendants' allegedly

25   "intentional, oppressive and malicious acts, with the intent of depriving Plaintiff of property and

26   legal rights and otherwise causing Plaintiff injury." (Complaint, ¶¶ 56-58.)

27           State law claims that arise out of the implementation of CBA procedures for

28   discipline and discharge have been held preempted by Section 301.  *Cf. Miller v. AT&T Network*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

16.

Case No. CV 10-4140 JSW

1  *Sys.*, 850 F.2d 543, 550-51 (9th Cir. 1988) (intentional infliction of emotional distress claim

2  preempted by section 301); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1349-50 (9th Cir.

3  1985) (same).

4         California FEHA claims are also preempted by the LMRA when they cannot be

5  resolved without interpreting the express or implied terms of a CBA. *Bachilla v. Pac. Bell Tel. Co.*,

6  2007 U.S. Dist. LEXIS 71232 (E.D. Cal. Sept. 25, 2007); *see also Audette v. Longshoremen's and*

7  *Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999); *Madison v. Motion Picture Set*

8  *Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1253 (C.D. Cal. 2000) (where proof of

9  plaintiff's *prima facie* case for race discrimination under FEHA would require interpretation of the

10  CBA and where defendant's articulated nondiscriminatory reasons for the action it took would

11  almost certainly require interpretation of the CBA, claim was preempted by the LMRA).

12         In *Bachilla*, the plaintiff alleged sex discrimination in violation of FEHA based on her

13  employer's promotion of less senior male coworkers, supposedly in violation of company policy to

14  promote based on seniority. *Id.* at *23. Resolution of the discrimination claim was substantially

15  dependent on an analysis of the CBA because the terms of plaintiff's employment, including her

16  eligibility for promotions, were governed by the CBA. *Id.* at *26. The court further noted that the

17  employer "would undoubtedly assert that it complied with the procedures set forth in the CBA,"

18  resolution of the state discrimination claims would turn on defendant's offer of legitimate

19  nondiscriminatory reasons, which would require interpretation of the CBA. *Id.* Plaintiff's claim was

20  "inextricably intertwined" with consideration of the terms of the CBA because the court would be

21  required to interpret the seniority and transfer provisions of the CBA. The discrimination claims

22  were therefore preempted by the LMRA, removal was proper, and the federal court had jurisdiction

23  to dismiss the complaint. *Id.* at *26-27.

24         Similarly, in *Audette v. International Longshoremen's & Warehouseman's Union*,

25  195 F.3d 1107 (9th Cir. 1999), plaintiff employees alleged that their union committed gender

26  discrimination and retaliation for a prior lawsuit in violation of Washington state's

27  antidiscrimination law. The Ninth Circuit affirmed denial of a motion to remand on the basis that

28  the claims were preempted by Section 301 of the LMRA. Under state discrimination law, an

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO        17.        Case No. CV 10-4140 JSW
PLAINTIFF'S MOTION TO REMAND

1    employer or union could refute a *prima facie* case of discrimination by offering a legitimate,

2    nondiscriminatory reason for their employment decision. Thus, "resolution of the discrimination

3    claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation

4    of the collective bargaining agreement. . . ." *Id.* at 1113.

5            While Plaintiff's Complaint avoids mentioning the terms of the CBA, Plaintiff plainly

6    contends in substance in his FEHA discrimination claim that Recology discriminated against him by

7    following the CBA-mandated testing standards. As in *Audette*, Plaintiff here must prove that

8    Recology's alleged nondiscriminatory legitimate business reason (following the CBA's drug testing

9    procedures) was pretextual. *Schultz v. Spraylat Corp.*, 866 F. Supp. 1535, 1539 (C.D. Cal. 1994).

10   Plaintiff alleges that he was wrongfully suspended and required to attend rehabilitation under a

11   "policy" that is not only dictated by the CBA, it *requires* Recology to suspend Plaintiff for failing to

12   give a urine sample within three hours when the Medical Review Officer finds no medical

13   explanation. The determination of the MRO is binding and the MRO is "the only person permitted

14   to change a verified test result," including "a determination that there was or was not a legitimate

15   medical explanation for a laboratory test result." 49 C.F.R. § 40.149(c). Resolution of Plaintiff's

16   discrimination claim therefore will require analysis of whether Recology's following of the CBA

17   was a legitimate business reason or whether it was pretextual. Just like in *Audette* and *Bachilla*, that

18   analysis will be substantially dependent upon the express terms of the CBA.

19           Moreover, Plaintiff alleges that Recology acted "intentionally, oppressively, and

20   maliciously toward Plaintiff with conscious disregard of Plaintiff's rights. . . ." (Complaint, ¶ 58.)

21   As in *Bachilla*, resolution of this state law discrimination claim will likely turn on whether

22   Recology's reliance on the MRO and the CBA-mandated drug testing procedures was intentional,

23   malicious or oppressive conduct. By so alleging, Plaintiff's Fifth Cause of Action is intertwined

24   with the CBA and substantially dependent upon it, and thus is preempted by Section 301.

25           The cases Plaintiff relies upon do not dictate a different result. (Pltf. Mtn. at 9:12-

26   10:5) Both cases pre-date *Burnside*, and thus the preemption analysis they undertake is questionable

27   if not invalid. In both cases, the courts failed to undertake the second prong of the analysis required

28   by *Burnside*. In *Saridakis v. United Airlines*, 166 F. 3d 1272 (9th Cir. 1999), the court declared its

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND                    18.                    Case No. CV 10-4140 JSW

1    inquiry to be "strictly limited to determining if the rights under the ADA and FEHA are derived

2    from sources independent of the CBA." *Id.* at 1277.  *Espinal v. Northwest Airlines*, 90 F. 3d 1452,

3    1457-58 (9th Cir. 1996) (same).[6]  In any event, Plaintiff's claim here is more analogous to that found

4    preempted in *Bachilla* and *Audette*, because his claim is that the CBA did not provide Recology with

5    a legitimate justification for its conduct, and resolution of the discrimination claim turns on whether

6    Recology has a legitimate nondiscriminatory reason for his suspension, which will depend upon the

7    terms of the CBA.[7]

8        **C.    Alternatively, This Court Should Exercise Supplemental Jurisdiction Over The
             Pendent State Claim**

9

10            To the extent that the claims alleged in the Complaint may not be completely

11   preempted by Section 301 of the LMRA, they are removable under 28 U.S.C. § 1441(c) and,

12   pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367.   This Court has

13   jurisdiction over such state law claims pursuant to the doctrine of supplemental jurisdiction under 28

14   U.S.C. §1367(a), as they are so related to the federal claims as to form part of the same case or

15   controversy under Article III of the U.S. Constitution.  Plaintiff chose to bring these claims together

16   in one lawsuit, and he will be a prominent witness since he seeks to be the sole class representative.

17       **D.    In Any Event, Defendant Brought A Good Faith Removal Petition And Fees Are
             Not Justified**

18

19            Even if this Court were to grant this motion to remand, Plaintiff's request for

20   attorney's fees should not be granted.  Our Supreme Court has held that "attorney's fees should not

21   be awarded when the removing party has an objectively reasonable basis for removal."  *Martin v.*

22   _____

23   [6]    The other authority cited by Plaintiff also is inapposite.  Recology does not premise
     preemption merely on a general provision in the CBA which broadly prohibits discrimination, like
     the employers in *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988), *Cook v.*

24   *Lindsay Olive Growers*, 911 F. 2d 233 (9th Cir. 1990), *Chimel v. Beverly Wilshire Hotel Co.*, 873
     F.2d 1283 (9th Cir. 1989), and presumably *Ramirez v. Fox Television*, 998 F. 2d 743 (9th Cir. 1993),

25   and *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638 (9th Cir. 1989), where the CBA provisions the
     employers relied upon are not specified in the opinions.  Rather, Recology bases preemption on the

26   detailed and mandatory drug-testing procedures expressly required by the CBA, which form the
     basis for proof of a legitimate, non-pretextual basis for suspending Plaintiff under state law.

27   [7]    For this reason, *Jimeno v. Mobil Oil Corp.*, 66 F. 3d 1514 (9th Cir. 1995), is distinguishable,
     because the court here must consult Recology's CBA to determine whether Recology's decision to

28   suspend Plaintiff constitutes a *prima facie* case under FEHA.  *Id.* at 1528.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO          19.          Case No. CV 10-4140 JSW
PLAINTIFF'S MOTION TO REMAND

1   *Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).[8]   Plaintiff's Complaint objectively impacts the

2   governing CBA, and Recology has case authority that in good faith amply supports its removal.

3   Attorney's fees consequently are not warranted.

4   **IV.   CONCLUSION**

5         Federal law preempts state law claims to ensure uniform interpretation of collective

6   bargaining agreements.   This salutary purpose is served by the requisite broad construction of

7   Section 301 to preempt claims that are either inextricably intertwined or substantially dependent

8   upon the terms of a collective bargaining agreement.   Plaintiff's wage claims here meet this test

9   because resolution of his "rounding" claim will require interpreting multiple provisions in that

10  agreement which govern rates of pay, guaranteed pay, enhanced pay, job classifications, and what

11  qualifies as "working" and being "available for work" for purposes of obtaining a full day's pay or

12  premium pay.   These determinations are complicated by Plaintiff's assertion of his rounding claim

13  on behalf of at least eight classifications of workers in his putative class.   As in *Adames*, his claims

14  "inescapably involve[] the relationship between various [California] labor laws . . . and certain terms

15  of the CBA addressing the same subject."   Section 301 therefore preempts this claim.

16        Plaintiff's discrimination claim is squarely based upon the CBA since Plaintiff

17  contends that Recology's reliance on the CBA-mandated drug testing procedures was intentional

18  discrimination.   Just like in *Bachilla* and *Audette*, resolution of this claim will require determining

19  the obligations of the employer under the CBA procedures to decide whether Recology's proffered

20  legitimate nondiscriminatory reason for suspending Plaintiff was valid and not pretextual.

21

22

23

24

25

26

27

---

28  [8]   In addition, the cases Plaintiff cites pre-date *Martin*, and in any event, involve egregious circumstances not at issue here.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFENDANTS' MPA IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

20.

Case No. CV 10-4140 JSW

1        Plaintiff's claims are therefore preempted by Section 301 of the LMRA and this

2    motion to remand should be denied.

3    Dated: October 22, 2010

4                                          */S/Rod M. Fliegel*

5                                          ROD M. FLIEGEL
LITTLER MENDELSON, P.C.

6                                          Attorneys for Defendants
RECOLOGY INC. and RECOLOGY SAN

7                                          FRANCISCO

Firmwide:97962080.1 016440.2612

DEFENDANTS' MPA IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND    21.    Case No. CV 10-4140 JSW