**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEZZACK DANIELS, | No. C 10-04140 JSW |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| v. | |
| RECOLOGY, INC., | |
| Defendant. | |

## INTRODUCTION

Now before the Court is the motion to remand by Plaintiff Hezzack Daniels ("Daniels"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, the Court HEREBY GRANTS Daniels' motion to remand.

## BACKGROUND

Daniels is an employee of Defendant Recology, Inc. ("Recology") and is a member of the Sanitary Truck Drivers and Helpers Union, Local 350 ("Local 350"). (Declaration of Michael Crosetti in Opposition to Motion to Remand ("Crosetti Decl."), ¶ 4.) Daniels is employed pursuant to a collective-bargaining agreement ("CBA") between Recology and Local 350. (*Id.*)

The various job classifications available at Recology and the per-hour regular wage rate for each position are set forth in the CBA. (Crosetti Decl., Ex. 1, at 3-5.) The CBA also provides for a premium pay rate of one and one-half times an employee's regular pay for "hours worked in excess of eight hours in any work day." (*Id.*, at 6.)

1 Daniels alleges that Recology has failed to pay its employees wages due for hours
2 worked, that Recology has failed to maintain required employee time records, that Recology
3 failed to furnish employees with timely and accurate wage and hour statements (collectively
4 "Wage and Hour" claims), that Recology engaged in unfair business practices, and that
5 Recology discriminated against Daniels on account of his disability.

6 Daniels' Wage and Hour claims are centered on Recology's time-keeping system. He
7 claims that Recology's time-keeping system is inaccurate. (Compl. ¶ 30.) Daniels alleges that
8 all employees are required to clock in for work using an electronic tracking system. (*Id.* ¶¶ 23-
9 26, 30-31.) However, at certain times, the tracking system rounds up to the nearest quarter hour
10 when the employee clocks in, and rounds down to the nearest quarter hour when the employee
11 clocks out at the end of the workday. (*Id.*) Thus, Recology does not keep accurate records of
12 when its employees worked, and it does not pay its employees for all hours worked. (*Id.* ¶ 30.)

13 Daniels also claims that Recology unlawfully discriminated against him, under
14 California's Fair Employment and Housing Act ("FEHA"), when Recology suspended him
15 from work for failing to provide a urine sample during a drug test. (*Id.* ¶ 50.) Daniels alleges
16 that Recology's drug-testing policy requires random testing and the tested employee then must
17 submit a urine sample within a three-hour time period. (*Id.* ¶ 52.) If an employee did not
18 submit a sufficiently large sample, Recology considered the employee to have failed the drug
19 test. (*Id.* ¶ 54.) The penalty for a failed drug test was an automatic three month suspension
20 from work without pay. (*Id.*)

21 Daniels alleges that he has Type-I diabetes and that Recology was aware of his diabetes.
22 (*Id.* ¶ 51.) He also alleges that when his insulin levels are abnormal, due to his diabetes, he is
23 unable to urinate. (*Id.* ¶ 52.) Daniels alleges that he was tested by Recology, but he was unable
24 to provide a sufficient sample due to his disability. (*Id.*) Daniels alleges that despite knowing
25 about his diabetes, Recology suspended him from work for failing to provide a sufficient urine
26 sample. (*Id.* ¶¶ 54-55.)

27 On August 12, 2010, Daniels filed a complaint in the Superior Court for the County of
28 San Francisco against Recology. On September 15, 2010, Recology removed the action to this

2

1 Court on the basis that Daniels' claims are preempted by Section 301 of the Labor-Management
2 Relations Act ("Section 301").

## ANALYSIS

**A.  Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987).  The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim.  "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*  Thus, under the well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28.  A court cannot exercise removal jurisdiction, however, on the ground that the complaint gives rise to a potential or an anticipated defense that might raise a federal question, even if the defense is the only question truly at issue in the case. *Id*. at 10, 14; *see also Caterpillar*, 482 U.S. at 393.

While a defense of pre-emption, also known as "ordinary pre-emption," is insufficient to demonstrate removal jurisdiction, "complete pre-emption," which is a corollary to the well-

3

pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996). Under the complete pre-emption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Rains*, 80 F.3d at 344. Section 301 is a federal statute with complete preemptive force. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-562 (1968).

"Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar,* 482 U.S. at 394 (quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859, n. 3 (1987)). However, mere consultation or reference to the collective bargaining agreement is not enough; preemption only results if resolution of the state-law claim requires the court to interpret the collective bargaining agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (citing *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988)); *Milne v. Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1409 (9th Cir. 1991). Thus, "[the Supreme Court has been] clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124 (citing *Lingle*, 486 U.S. at 413 n.12).

**B.     Section 301 Does Not Preempt Daniels' Claims.**

    **1.     Daniels' Wage and Hour Claims Are Not Substantially Dependent on the CBA.**

Daniels argues that this Court will not be required to interpret the CBA to resolve his claims. Recology counters that Section 301 preempts Daniels' Wage and Hour claims, because the Court will be required: (1) to interpret terms it claims are ambiguous in the CBA, such as "available for work;" (2) to calculate damages based on wages due under the CBA; and (3) to answer various hypothetical disputes. (Def. Opp., at 10-13.) The Ninth Circuit has set forth a

1  two-step inquiry into whether Section 301 preempts a state law claim. *Burnside v. Kiewit*
2  *Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

3  First, the Court must inquire "into whether the asserted cause of action involves a right
4  conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]."
5  *Id.* "If, however, the right exists independently of the" collective bargaining agreement, a court
6  must "still consider whether it is nevertheless 'substantially dependent on analysis of a
7  collective-bargaining agreement.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 394.) A state law
8  claim is substantially dependent on analysis of a collective bargaining agreement where a court
9  will be required to interpret, as opposed merely to "look to," the collective bargaining
10 agreement to resolve the plaintiffs claim. *See id.* at 1071.

11 Neither party disputes that California provides a right to be paid for hours worked that is
12 independent of the CBA. Thus, this Court focuses on whether Daniels' Wage and Hours claims
13 are "substantially dependent on analysis of [the CBA]." *Caterpillar,* 482 U.S. at 394   The
14 Court concludes they are not. In *Burnside*, the plaintiffs claimed that their employer did not pay
15 them for employer-mandated travel time as required under California law. *Burnside*, 491 F.3d
16 at 1058. The Ninth Circuit rejected the defendant's argument that the court would have to
17 interpret certain terms in a CBA, because none of those term were relevant to the "purely
18 factual" issue of whether the defendant required employees to use employer provided
19 transportation. *Id.* at 1072-73. The court also rejected the defendant's argument that
20 calculation of overtime required interpretation of the CBA. *Id.* at 1073. The *Burnside* court
21 held that because the plaintiff did not dispute the rate of pay, "the basic legal issue [of whether
22 employees went unpaid for hours worked] ... [could] be decided without interpreting the CBA."
23 *Id.* at 1074.

24 Similarly, Daniels alleges that Recology has not fully paid its employees because of the
25 rounding program. He alleges that when employees clock-in before a certain time the clock
26 rounds up, and when employees clock-out past a certain time, the clock rounds down. As such,
27 Daniels asserts, Recology has not paid its employees their full wages due. As in *Burnside*,
28 whether the rounding program keeps an accurate record of the hours worked by each employee,

5

such that Recology has not paid all wages due, is a "purely factual inquiry." *Id.* at 1072 (quoting *Lingle*, 486 U.S. at 407). Moreover, as in *Burnside*, Daniels has not indicated that he disputes "the wage rate the employees were paid for certain work, but ... the fact that he was not paid at all." *Id.* at 1073. As such, this Court will not be required to interpret the CBA.

The Court also finds the cases on which Recology relies to be inapposite. For example, in *Firestone v. Southern California Gas Co.*, 291 F.3d 1066 (9th Cir. 2000), plaintiffs disputed whether the defendant paid plaintiffs a premium rate for hours worked beyond eight hours per day, as required under California law. The defendants paid the plaintiffs a flat rate for their work during a regular-time shift based on multiple factors set out in the CBA. *Firestone*, 219 F.3d at 1063. The court held that to determine whether the defendant paid plaintiffs a premium rate, it had to interpret the collective-bargaining agreement to calculate the regular rate due for hours worked. *Id.* at 1065-66. Thus, due to the complexity of converting plaintiffs' regular flat rate to an hourly rate, the court held that it was required to interpret the CBA; as such, Section 301 preempted the plaintiffs' claims. *Id.* at 1066.

Similarly, in *Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001), the defendant paid plaintiffs, flight attendants, according to a complex schedule that took into account flight time, actual duties, and time zones crossed during their shifts. *Id.* at 13-14. Because plaintiffs' pay was not simply linked to hours worked, the court would have had to interpret the CBA to calculate hourly wages. *Id.* As such, the First Circuit concluded that Section 301 preempted the plaintiffs' claims because "the factual predicates triggering the applicability of [Puerto Rico's] laws at issue require an interpretation of the agreement." *Id.* at 16.

The district court cases cited by Recology also are not persuasive. In *Blackwell v. SkyWest Airlines, Inc.*, 2008 U.S. Dist. LEXIS 97955, *33 (S.D. Cal. Dec. 3, 2008), the district court noted that to calculate wages due the plaintiff, the court would have to parse "many applicable pay rates" under the CBA. Similarly, in *Pruell v. Caritas Christi*, 2010 U.S. Dist. LEXIS 101770 (D. Mass. Sept. 7, 2010), the plaintiffs were not paid a simple per-hour wage

6

1    rate. Instead, "[t]o compute the remedy, the Court would [have had] to apply multiple CBA
2    provisions to establish what the plaintiffs' wage rates would be." *Id.* at *9.

3    In this case, Daniels does not allege that he disputes the wage rates under the CBA. The
4    wage calculations are also not so complex such that this Court would have to interpret, as
5    opposed to reference, the CBA to determine damages. Instead, unlike in *Firestone* and *Adames*,
6    Recology compensated Daniels for both regular and overtime hours worked at a per-hour rate.
7    (Crossetti Decl., Ex. 1, at 3-5.) As such, the Court would merely have to "look to," as opposed
8    to interpret, the CBA to calculate damages. *Burnside*, 491 F.3d at 1073.[1]

9    This Court concludes that Recology has not demonstrated that the Court will be required
10   to interpret the CBA to resolve Daniels' Wage and Hour claims. Therefore, Recology has not
11   satisfied its burden of establishing federal jurisdiction for purposes of removal and remand is
12   appropriate.

### b.     Section 301 does not preempt Daniels' FEHA claim.

14   Recology also argues that Section 301 preempts Daniels' FEHA claim, because it is
15   substantially dependent on interpretation of the CBA. Recology asserts that this Court will be
16   required to interpret the CBA to determine whether Recology suspended Daniels for a
17   legitimate non-discriminatory business reason. (Def. Opp., at 18.) Daniels counters that
18   Recology's use of the CBA as a defense does not warrant preemption under Section 301.
19   (Reply, at 7-8.) Where the plaintiff's claim is based on state law, like FEHA, "[Section] 301
20   preemption is not mandated simply because the defendant refers to the [collective bargaining
21   agreement] in mounting a defense." *Detabali v. St. Luke's Hospital*, 482 F.3d 1199, 1203 (9th
22   Cir. 2007) (quoting *Cramer*, 255 F.3d at 691).

23   In *Detabali*, the plaintiff claimed, *inter alia*, that the defendant terminated her because
24   of her race, in violation of FEHA. *Id.* at 1201. The defendant responded that it terminated her
25   because she was insubordinate, abandoned her patients, and harassed other employees. *Id.* at

---

[1] Recology also sets out a series of hypothetical disputes where the Court *might* be required to interpret the CBA. (Def. Opp., at 12-13.) However, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc).

7

1202. Detabali claimed she was not insubordinate because, under her collective-bargaining agreement, she was not required to do the work requested of her. *Id.* Although the dispute turned on the defense that the defendant had the right to terminate Detabali under the CBA, the court held that "because there [was] no dispute over the meaning of any terms within the [collective-bargaining] agreement, resolution of the central issue – whether [the defendant] discriminated against Detabali in applying the agreement – does not depend on interpretation of the collective bargaining agreement." *Id.* at 1203.

Recology relies on *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999) and *Bachilla v. Pacific Bell Telephone Co.*, 2007 U.S. Dist. LEXIS 71232 (E.D. Cal. Sept. 25, 2007) to support its position. The Court finds each case is distinguishable. For instance, in *Audette*, the plaintiffs alleged the defendant discriminated against the plaintiffs because of their sex when the defendant failed to register the plaintiffs for positions as required under a previous settlement agreement. *Audette*, 195 F.3d at 1112. The settlement agreement required defendants to register the plaintiffs for a specific class of positions, unless defendants could demonstrate legitimate business reasons for not doing so. *Id.* In evaluating a breach of contract claim relating to the settlement agreement, the court determined that in order to determine whether the defendants had legitimate business reasons for not registering plaintiffs, *i.e.* whether they had not breached the settlement, it would be required to interpret specific provisions of the collective bargaining agreement. *Id.* at 1112. Because plaintiffs claims of discrimination depended on "whether defendants' alleged failure to perform the settlement agreement was motivated by retaliation or discrimination," the court would also need to interpret those provisions of the collective bargaining agreement. *Id.* at 1113.

In *Bachilla*, the plaintiff alleged that the defendant discriminated against her because of her sex when, in violation of company policy, the defendant promoted less-senior male employees. Whether plaintiff was eligible for a promotion was governed by the terms of the collective bargaining agreement. *Bachilla*, 2007 U.S. Dist. LEXIS 71232, at *24-27. The court concluded that "preemption [was] appropriate under the circumstances because the question

8

before the court is the interpretation to be given to the seniority and transfer provisions" of the collective bargaining agreement and because "the factual inquiry as to whether [the defendant] had a non-discriminatory reason for failing to promote" the plaintiff turned on the meaning of those provisions. *Id.* at *26-27.

The Court finds that *Detabali* is on point. Unlike the plaintiffs in *Audette* and *Bachilla*, Daniels does not allege that Recology violated the CBA when it suspended him from work and he does not dispute its terms. Rather, Daniels claims that Recology suspended him when he failed the drug test. However, according to Daniels he failed because of his disability. In order to prove his case, Daniels may be required to show that Recology's reliance on the CBA-mandated procedures is a pretext and that Recology actually suspended him because of his disability. However, Daniels does not dispute whether Recology followed the CBA-mandated procedures. Thus, because he does not dispute that Recology in fact followed those procedures, this Court will not be required to interpret terms from the CBA that dictate those procedures.

Unlike the discrimination claim in *Audette*, Daniels' FEHA claim is a "free-standing claim of discrimination," and will require a purely factual inquiry, untethered to interpretation of a CBA, into whether Recology violated FEHA. *Audette*, 195 F.3d at 1113. Therefore, Section 301 does not preempt Daniels' FEHA claim.

### 3. Daniels Shall Not be Awarded Attorney's Fees.

Pursuant to 28 U.S.C. § 1447(c), Daniels requests an award of attorney's fees and costs. "An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). To determine whether to award costs and fees under Section 1447(c), this Court has a "great deal of discretion." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993). Although it was not ultimately persuaded by Recology's arguments, the Court does not find that Recology's removal was frivolous or motivated by bad faith. The Court therefore declines to exercise its discretion to award Daniels' fees and costs under Section 1447(c).

//
//

9

//

## CONCLUSION

For the foregoing reasons, the Court GRANTS Daniels' motion to remand and DENIES Daniels' request for fees and costs.  The case is remanded to the Superior Court for the County of San Francisco.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 20, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE